| | |
|---|---|
| **LONNIE ALLEN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-6452** |
| **N. BURL CAIN, WARDEN** | **SECTION: "F"(3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Lonnie Allen, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On September 23, 2003, he was convicted of second degree murder under Louisiana law.[1] On October 1, 2003, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2] On May 19, 2004, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[3] The Louisiana Supreme Court then denied his related writ application on November 19, 2004.[4]

---

[1] State Rec., Vol. 1 of 2, minute entry dated September 23, 2003; Rec. Doc. 3-6, p. 18 (trial transcript).
[2] State Rec., Vol. 1 of 2, minute entry dated October 1, 2003; Rec. Doc. 3-6, p. 35 (sentencing transcript).
[3] State v. Allen, 876 So.2d 122 (La. App. 4th Cir. 2004); State Rec., Vol. 1 of 2.
[4] State v. Allen, 888 So. 2d 194 (La. 2004); State Rec., Vol. 1 of 2.

On or about February 24, 2005, petitioner filed an application for post-conviction relief with the state district court.[5] That application was denied in part on March 21, 2007,[6] and his remaining claims were then denied on November 18, 2013,[7] and October 7, 2015.[8]

Petitioner thereafter filed the instant federal application seeking habeas corpus relief.[9] The state filed a response conceding that the application is timely.[10]

**Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The

---

[5] State Rec., Vol. 2 of 2.
[6] State Rec., Vol. 2 of 2, Judgment dated March 21, 2007.
[7] Rec. Doc. 3-3, pp. 43-45 (ruling dated November 18, 2013).
[8] Rec. Doc. 3-3, pp. 47-48 (ruling dated October 7, 2015).
[9] Rec. Doc. 3.
[10] Rec. Doc. 10.

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at

3

> hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

4

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> Reginald Davis and his cousin, Mr. [Norman] Royal, lived in a double house located at 1802-1804 Music Street, New Orleans, Louisiana. On the evening that Mr. Royal was killed, Mr. Davis and three other men, Robert Spriggens,[FN1] Tremaine Andrews, and Lawrence Clark, had been sitting on the porch of the Music Street residence socializing and drinking beer for a few hours. Then Mr. Royal came out of his house and jumped off the porch onto the sidewalk, because he and the group planned to go to a club.
>
> > [FN1] We note that certain of the names included in this opinion are spelled in various ways in the record.
>
> Suddenly, three unknown men approached the group on the porch. All three of them were carrying guns, and two of them were wearing bandanas to mask their identity. The unmasked man threatened Mr. Royal, grabbed him around the neck, and said, "I got you Mother F_____ now. Don't nobody move." Mr. Davis realized that the three armed men wanted money, so he gave them $230 that he had in his pocket. The armed men apparently did not believe that they had been given all of the money in the group's possession, and the unmasked man hit Mr. Royal in the head with a gun. The armed men attempted to get the group to go inside the residence, but they refused to do so. One of the armed men, however, yelled, "Watch him; he bout to break into the house. He bout to run in the house." At that point Mr. Clark did, in fact, run into the house, and the unmasked gunman shot Mr. Royal. The other two gunmen then started shooting while all three gunmen were

5

running away from the residence. Mr. Spriggens and Mr. Andrews were wounded by the gunfire.

The armed men fled in what appeared to be a red Pontiac Sunfire automobile with a defective tail light and a commercial license plate. Mr. Davis testified that he was able to observe the license plate on the car and that the license plate number began with the letter "A." Mr. Davis was also able to remember the last two digits of the number. The night that Mr. Royal was killed, Mr. Davis was driven by a police officer to a red automobile that had been stopped by the police. Mr. Davis was asked whether he could identify the automobile, and he said that it was not the getaway car.

New Orleans Police Department ("NOPD") Homicide Detective Carlton Lawless, who was the lead investigator in this case, testified at the trial regarding his investigation. He identified photographs of the crime scene, testified that he directed the crime laboratory to obtain and examine evidence such as blood and spent bullets, and said that the illumination at the crime scene that was furnished by street lights was "pretty good" and that the front porch lights were "quite bright."

Detective Lawless also testified that on the day after Mr. Royal was killed, a red vehicle was observed in the area but was never located. Within the next few days, however, a police officer who was on patrol notified Detective Lawless that a vehicle fitting the description of the getaway car had been located in the 2100 block of Desire Street in New Orleans. The officer who had spotted the vehicle determined that it was not occupied, so he put it under surveillance. While he was conducting surveillance on the vehicle, a young lady entered the vehicle and attempted to drive away. When she did this, she was stopped by the police officer.

Detective Lawless testified that the young lady, Trelia Smith, and the vehicle were both transported to the police station. Detective Lawless questioned Ms. Smith at the police station. He asked her whether the car was hers and whether she was the only person who drove the car. Detective Lawless testified that taped statements were taken from Trelia Smith and Linda Reeves. Detective Lawless stated that through his investigation he determined that Linda Reeves was Ms. Smith's mother. When he was asked whether he developed a suspect at this point in the investigation, Detective Lawless said that he had. He identified the suspect as Mr. Allen, and he further testified that "I learned through the investigation that that was here [sic] husband."[FN2]

> [FN2] Mr. Allen's counsel objected to the testimony regarding the relationship between Mr. Allen and Ms. Smith on the ground that the testimony was hearsay.

Detective Lawless testified that after he had developed Mr. Allen as a suspect, he showed a photographic line-up to Mr. Davis, Mr. Andrews, Mr. Spriggens, and Mr. Clark. He showed the line-up to each of the men individually, and Mr. Davis identified Mr. Allen's picture as the picture of the man who had killed Mr. Royal. None of the other men made a positive identification from the line-up.

After Mr. Davis positively identified Mr. Allen in the photographic line-up, Detective Lawless prepared an arrest warrant for Mr. Allen and a search warrant for the red vehicle driven by Ms. Smith. Pursuant to the search warrant, a number of latent fingerprints were lifted from the vehicle, but according to the testimony of NOPD Officer Terry Bunch, only one was suitable for identification. Officer Bunch, who was qualified as an expert in fingerprint examination, testified that the fingerprint that was suitable for identification did not belong to Mr. Allen or to any other person known to the police.

NOPD Detective Kevin Johnson testified at the trial that he and two other police officers went to the residence at 6122 Music Street in New Orleans to execute the arrest warrant for Mr. Allen. One of the officers knocked on the door of the residence, but there was no answer. After the officers had been outside the residence for about fifteen minutes, Ms. Smith answered the door, and she permitted the officers to enter her residence. The police officers searched the residence but did not find Mr. Allen. They then heard noises in the attic and ordered the person in the attic to surrender. After getting no response from the person in the attic, the officers summoned a police canine unit. When the unit arrived at the residence with a dog in the car, Mr. Allen surrendered to the police and was arrested. During his testimony at trial, Detective Johnson identified Mr. Allen as the person that he had arrested at 6122 Music Street. [11]

## Petitioner's Claims

### I. Confrontation Clause

Petitioner claims that his rights under the federal Confrontation Clause were violated when the state court allowed inadmissible hearsay into evidence at trial. On direct appeal, the Louisiana Fourth Circuit Court of Appeal held:

> Mr. Allen contends that, despite his objection to such evidence, the trial court permitted the State to present inadmissible hearsay evidence regarding Mr. Allen's connection to the getaway car. Mr. Allen specifically argues that Detective Lawless' testimony informed the jury that Ms. Reeves was Ms. Smith's mother. The following colloquy occurred between the prosecutor and Detective Lawless:
>
> Q. Detective, were taped statements taken of witnesses that night in reference to the red Pontiac?
>
> A. Yes, they were.
>
> Q. And who were the people that the statements were taken from?

---

[11] State v. Allen, 876 So.2d 122, 124-26 (La. App. 4th Cir. 2004); State Rec., Vol. 1 of 2.

7

A. From Trelia Smith, and Linda Reeves, that's Trelia Smith's mother.

Q. And who took Linda Reeves' statement?

A. I'll be honest with you; offhand I don't remember. I can't say if I took it or another detective. I don't know.

Q. Were you present at the Station when the statements were being taken?

A. Yes.

La. C.E. art. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is not admissible evidence except as expressly provided by legislation. La. C.E. art. 802. In the instant case, we question whether the statements made by Detective Lawless regarding the relationship were, in fact, offered to prove the truth of the matters asserted, i.e., that Ms. Reeves was Ms. Smith's mother and that Ms. Smith was married to Mr. Allen. The only matters, the truth of which needed to be admitted into evidence, were the fact that a vehicle that appeared to match the description of the getaway car was located and that as a result of the vehicle being located, the police obtained information that led them to believe that Mr. Allen might be a suspect in the killing of Mr. Royal. There was no need to prove to the jury that Ms. Reeves was Ms. Smith's mother or that Ms. Smith was Mr. Allen's wife.

Even if the information regarding Mr. Allen's relationship to Ms. Reeves and Ms. Smith were inadmissible hearsay, the admission of the hearsay evidence was harmless error. In State v. Vale, 96-2953 (La. 9/19/97), 699 So.2d 876, the Louisiana Supreme Court stated that in order for a reviewing court to find that an error in a case is harmless beyond a reasonable doubt, the court must find that the verdict actually rendered in that particular trial was "surely unattributable to the error." 699 So.2d at 877, citing State v. Code, 627 So.2d 1373 (La. 1993) (quoting Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)).

In the instant case, we find that any reference in the testimony at Mr. Allen's trial to his relationship to Ms. Reeves and Ms. Smith was not a factor in the jury's decision. The verdict of guilty of second degree murder was "surely unattributable" to the admission of the testimony concerning Mr. Allen's relationship to Ms. Reeves and Ms. Smith. The jury had ample evidence upon which to convict Mr. Allen based on the in-court eyewitness identification of Mr. Allen by Mr. Davis. Mr. Davis' identification was thoroughly scrutinized by Mr. Allen on cross-examination, and the jury chose to believe his testimony regarding his identification of Mr. Allen.

> We find that the testimony to which Mr. Allen objects was not inadmissible hearsay, but even if it were, it was harmless error to allow its introduction. Therefore, we find this assignment of error to be without merit.[12]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[13]

Obviously, petitioner has no interest in pursuing a state-law hearsay claim in this proceeding, in that federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States – mere violations of *state* law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983). Therefore, he wisely presents the claim to this Court as a violation of the federal Confrontation Clause.[14] Further, in his federal application, he focuses not on the fact that Lawless's testimony revealed the nature of his relationships to Smith and Reeves (i.e. that Smith was his wife and that Reeves was his mother-in-law) but rather that it revealed that Smith and Reeves connected petitioner to the getaway car. Based on such differences, the parties disagree as to whether petitioner's Confrontation Clause claim is exhausted as required by federal law.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted). The United States Supreme Court has explained:

---

[12] State v. Allen, 876 So.2d 122, 128-29 (La. App. 4th Cir. 2004); State Rec., Vol. 1 of 2.
[13] State v. Allen, 888 So. 2d 194 (La. 2004); State Rec., Vol.1 of 2.
[14] Hearsay claims and Confrontation Clause claims are related but nevertheless distinct. The United States Supreme Court has noted: "While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception." California v. Green, 399 U.S. 149, 155-56 (1970); accord Gochicoa v. Johnson, 238 F.3d 278, 287 (2000) ("The Supreme Court and this court have in the past taken great pains to point out that hearsay errors and Confrontation Clause violations are not fungible. On the contrary, they have held that the overlap between an admission of hearsay and a Confrontation Clause violation is not complete; either may occur without the other.").

9

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose v. Lundy, 455 U.S. 509, 518 (1982) (citations, footnote, quotation marks, and brackets omitted).

The state argues that a federal Confrontation Clause claim was never asserted, and therefore necessarily never exhausted, in the state courts. Moreover, it cannot be doubted that a federal constitutional claim is not exhausted simply because a petitioner presented a similar state-law claim in the state courts:

> The exhaustion doctrine demands more than allusions in state court to facts or legal issues that might be comprehended within a later federal habeas petition. The exhaustion doctrine is based on comity between state and federal courts, respect for the integrity of state court procedures, and "a desire to protect the state courts' role in the enforcement of federal law." Castille v. Peoples, 489 U.S. 346, 349, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) (internal quotation marks omitted) (quoting Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)). To satisfy these important purposes, a petitioner must "fairly present[ ]" his legal claim to the highest state court in a procedurally proper manner. Morris v. Dretke, 379 F.3d 199, 204 (5th Cir. 2004). The state courts must be apprised of the constitutional foundation of the claim. Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam). Finally, "'[i]t is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.'" Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (quoting Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam)). Consequently, "'where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement.'" Id. (quoting Vela v. Estelle, 708 F.2d 954, 958 n. 5 (5th Cir. 1983)).

Nickleson v. Stephens, 803 F.3d 748, 753 (5th Cir. 2015).

However, petitioner counters that the rule is not so hard and fast, especially when (1) the federal and state claims (such as a federal Confrontation Clause claim and a state hearsay claim) are closely related and (2) the cases cited by the petitioner in the state courts addressed both. In Taylor v. Cain, 545 F.3d 327, 332-34 (5th Cir. 2008), the United States Fifth Circuit Court of Appeals agreed, finding a federal Confrontation Clause claim exhausted despite the petitioner's focus on state hearsay rules in the state courts. The Fifth Circuit observed: "[T]his court has before looked to the content of the cases cited in the state court filings in order to determine whether a claim was 'fairly presented.' Doing so here suggests that the nature of [petitioner]'s challenge was more sweeping than simply opposing a state-law evidentiary ruling." Id. at 334 (citation omitted).

Having reviewed petitioner's state-court filings and comparing them to those described in Taylor, the undersigned finds that it is at least arguable that petitioner, like the petitioner in Taylor, exhausted his federal claim despite the variance in the way his claim was presented to the state courts. In light of that fact, the most judicially efficient course is for this Court simply to deny petitioner's claim on the merits. It is beyond cavil that a federal court has the authority to deny a habeas claim on the merits regardless of whether the petitioner exhausted his state court remedies and whether exhaustion is waived by the state. 28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Lande v. Cooper, Civ. Action No. 11-3130, 2013 WL 5781691, at *26 n.68 (E.D. La. Oct. 25, 2013); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).

As noted, the state courts found the hearsay error, if any, was harmless. It is clear that Confrontation Clause violations are also subject to a harmless error analysis. Fratta v. Quarterman,

536 F.3d 485, 507 (5th Cir. 2008). Further, the undersigned likewise finds that a Confrontation Clause violation, if any, was similarly harmless for the following reasons.

On federal habeas review, the harmlessness of a purported constitutional error is analyzed under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). The United States Sixth Circuit Court of Appeals has provided a concise summary of how a federal habeas court is to apply the Brecht standard:

> Brecht requires a Confrontation Clause violation to have a "substantial and injurious effect or influence in determining the jury's verdict" before it merits reversal on collateral review. Brecht, 507 U.S. at 637, 113 S.Ct. 1710. In order to determine whether an error had such an effect or influence, the Supreme Court has instructed the lower federal courts "to ask directly, 'Do I, the judge, think that the error substantially influenced the jury's decision?'" O'Neal v. McAninch, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). "The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, *or if one is left in grave doubt*, the conviction cannot stand." Id. at 438, 115 S.Ct. 992 (quoting Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

McCarley v. Kelly, 801 F.3d 652, 665 (6th Cir. 2015), cert. denied, 136 S. Ct. 2508 (2016). Similarly, the United States Fifth Circuit Court of Appeals has explained:

> [U]nder Brecht, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is *more* than a mere reasonable possibility that it contributed to the verdict. It must have had a *substantial* effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the Brecht standard, of the error, then we must conclude that it was harmful. O'Neal v. McAninch, 513 U.S. 432, ----, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995).

Woods v. Johnson, 75 F.3d 1017, 1026-27 (5th Cir. 1996).

In the instant case, the evidence concerning the getaway car arguably served two purposes. One purpose, the one focused on by the state courts, was legitimate – it showed the course of the investigation and revealed how petitioner came to be identified as a suspect. Another purpose seems to have been to serve as actual evidence of guilt, i.e. the car was linked to the crime (in that

it was identified as the getaway car) and petitioner was then linked to the car (through the purported statements of Smith and Reeves). It is that second link which is problematic, in that neither Smith nor Reeves testified at trial subject to cross-examination.

Nevertheless, although the testimony concerning the statements might possibly have contributed in some way to the jury's verdict, it cannot fairly be said to have *substantially* influenced that verdict. Rather, the critical evidence which resulted in petitioner's conviction was undoubtedly the compelling eyewitness testimony of Reginald Davis, who unequivocally identified petitioner as the shooter.[15] Therefore, even if the state court erred in allowing into evidence statements concerning the car from nontestifying witnesses, that error was ultimately harmless. Accordingly, this claim should be denied.

## II. Sufficiency of the Evidence

It appears that petitioner may also be claiming that there was insufficient evidence to support his conviction.[16] If so, that claim likewise has no merit.

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's claim, holding:

> In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1, creates the following standard of review for federal courts reviewing a state conviction:
>
>> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be ... whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
>
> 443 U.S. at 318-19, 99 S.Ct. 2781 at 2788-89 (footnote omitted) (citation omitted).

---

[15] See, e.g., Rec. Doc. 3-5, p. 13 (trial transcript) ("I'm 100% sure that's him.").
[16] Although the claim is not discussed in his supporting memorandum, it is listed on his petition. Rec. Doc. 3, p. 8.

In State v. Mussall, 523 So.2d 1305 (La. 1988), the Louisiana Supreme Court stated that "this court ... recognized that ... the Jackson holding also applies to state direct review of criminal convictions." Id. at 1309. The Supreme Court in Mussall also recognized that the Louisiana Constitution has a due process clause "virtually identical to its Fourteenth Amendment model. La. Const. Art. I, § 2." Id.

The Supreme Court in Mussall stated that a review of the record in a criminal case does not require the reviewing court to determine whether the reviewing court believes the evidence at the trial established guilt beyond a reasonable doubt. The Supreme Court further stated as follows:

> [A] reviewing court must consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational fact finder can. .... [T]he inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt.

523 So.2d at 1309-10 (footnotes omitted). See also State v. Marcantel, 2000-1629 (La. 4/3/02), 815 So.2d 50; State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99.

La. R.S. 14:30.1 defines second degree murder, in relevant part, as follows:

> A. Second degree murder is the killing of a human being:
>
> (1) When the offender has a specific intent to kill or to inflict great bodily harm; or
> (2)(a) When the offender is engaged in the perpetration or attempted perpetration of ... armed robbery ... even though he has no intent to kill or to inflict great bodily harm.

Because La. R.S. 14:24 states that "[a]ll persons concerned in the commission of a crime ... whether they directly commit the act constituting the offense ... [or] aid and abet in its commission ... are principals," all three of the individuals who committed the armed robbery in this case are equally culpable.

There is no question in this case that Mr. Royal, a human being, was killed. Also, there was overwhelming evidence, which is undisputed by Mr. Allen, that Mr. Royal was killed while three men armed with guns took or attempted to take money at gunpoint from him and four other people. Further, because the unmasked man was holding Mr. Royal's neck and pointing a gun directly at his neck, it is clear that when the unmasked man shot Mr. Royal, he intended to kill him or, at the very least, inflict great bodily harm. Mr. Allen, however, contends that Mr. Davis' eyewitness identification of him as the person who killed Mr. Royal is insufficient to support the jury's finding in this case, particularly in light of the fact that there was no physical evidence linking him or the red Pontiac Sunfire automobile to the crime.

In the Marcantel case cited above, the Louisiana Supreme Court stated that "[w]here there is no physical evidence to link a defendant to the crime charged, *the testimony of one witness, if believed by the trier of fact, is sufficient support* for a factual conclusion required for a verdict of guilty." 2000-1629, p. 9, 815 So.2d at 56 (emphasis added). Therefore, if, after considering all of the evidence in this case, including the eyewitness identification of Mr. Allen by Mr. Davis, we find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm Mr. Allen's conviction. Additionally, in Marcantel, the Supreme Court stated that "[i]t is not the function of an appellate court to assess credibility or re-weigh the evidence." Id. Therefore, we are not to disturb the jury's verdict in this case on the ground that there was insufficient evidence to convict Mr. Allen, if we find that a rational trier of fact could have reached that verdict.

> In the instant case there was testimony that the crime scene was well illuminated. Mr. Davis testified that he spoke directly with the unmasked robber, asking him not to harm Mr. Royal. Therefore, Mr. Davis had an opportunity to view the robber who killed Mr. Royal. Although Mr. Davis admitted that he had been drinking beer prior to the robbery, there was no evidence that Mr. Davis was intoxicated. Further, Mr. Davis positively identified Mr. Allen at the trial as the person who killed Mr. Royal.
> 
> Mr. Davis also described the getaway car to police. His description of the getaway car closely matched certain aspects of the Sunbird that was located by the police. The getaway car was red, as was the Sunbird, the first letter of the license plate of the getaway car was "A", as was the first letter of the Sunbird's license plate, and the getaway car had some type of malfunction involving the light on the right rear of the car, as did the Sunbird. All of this supports a link between the person who killed Mr. Royal and the Sunbird that was seized.
> 
> Additionally, Mr. Allen hid in the attic when the police came to Ms. Smith's home to arrest him. This is a circumstance from which guilt may be inferred. In State v. Fuller, 418 So.2d 591 (La. 1982), the Louisiana Supreme Court stated that "[f]light and attempt to avoid apprehension indicates consciousness of guilt, and therefore, is one of the circumstances from which a juror may infer guilt." 418 So.2d at 593. See also, e.g., State v. Smith, 98-2645, p. 5 (La.App. 4 Cir. 1/26/00), 752 So.2d 314, 317.
> 
> When we view all of the evidence in this case in the light most favorable to the prosecution, we find that any rational trier of fact could have found that all of the essential elements of the crime of second degree murder were present beyond a reasonable doubt. Therefore, this assignment of error is without merit.[17]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[18]

---

[17] State v. Allen, 876 So.2d 122, 126-28 (La. App. 4th Cir. 2004); State Rec., Vol. 1 of 2.
[18] State v. Allen, 888 So. 2d 194 (La. 2004); State Rec., Vol.1 of 2.

15

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that he has made no such showing.

As correctly noted by the Louisiana Fourth Circuit Court of Appeal, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."). Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact

16

"twice-deferential." Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).

Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal habeas corpus proceedings; in these proceedings, only the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S. Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

In the instant case, petitioner argues that he was identified as the shooter by only one person, Reginald Davis. However, that argument is unavailing. Davis was in fact an eyewitness to the crime and positively and unequivocally identified petitioner as the shooter both prior to and at trial.[19] Moreover, the jurors obviously found Davis's testimony identifying petitioner as the shooter to be credible, and it is clear that a single, uncorroborated eyewitness identification, if found credible by the trier of fact, is constitutionally sufficient to prove identity and support a

---

[19] Rec. Doc. 3-4, p. 55 (trial transcript); Rec. Doc. 3-5, pp. 12-13 and 15 (trial transcript).

17

conviction. United States v. King, 703 F.2d 119, 125 (5th Cir. 1983); accord Davis v. Cain, Civ. Action No. 15-6652, 2016 WL 4537915, at *7 (E.D. La. May 24, 2016), adopted, 2016 WL 4529877 (E.D. La. Aug. 30, 2016); Colbert v. Cain, Civ. Action No. 14-2472, 2016 WL 4186551, at *11 (E.D. La. Apr. 12, 2016), adopted, 2016 WL 4161257 (E.D. La. Aug. 5, 2016); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *13 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012).

To the extent that petitioner is arguing that the jurors should not have found Davis credible, that simply is not for this Court to say. Credibility determinations are the province of the jurors, and a federal habeas court generally will not grant relief on a sufficiency claim grounded on such matters of credibility. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed *in the light most favorable to the prosecution*, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

**RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Lonnie Allen be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[20]

New Orleans, Louisiana, this eleventh day of May, 2017.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[20] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.